# EXHIBIT B

7an1mylc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4        v.                    07-CR-840 (PAC)

5  GEORGE FRANK MYLES, JR., a/k/a
   George Miles,
6
             Defendant.
7
   ------------------------------x
8
                              New York, N.Y.
9                             October 23, 2007
                              11:22 a.m.
10

11  Before:

12                      HON. PAUL A. CROTTY,

13                      District Judge

14
                         APPEARANCES
15
   MICHAEL J. GARCIA
16     United States Attorney for the
       Southern District of New York
17  CHRISTOPHER LaVIGNE
   JENNIFER G. RODGERS
18     Assistant United States Attorneys

19  FEDERAL DEFENDERS OF NY INC.
       Attorneys for Defendant
20  BY:  DAVID E. PATTON, ESQ.

21

22

23

24

25

1          (In open court)

2          (Case called)

3          THE DEPUTY CLERK:  :    For the government, please state

4    your appearances for the record.

5          MR. LaVIGNE:  :    Good morning, your Honor.

6    Christopher LaVigne and Jennifer Rodgers on behalf of the

7    government.

8          THE COURT:  :    Mr. LaVigne, Ms. Rodgers.

9          MS. RODGERS:  :    Good morning.

10          MR. PATTON:  :    Good morning, your Honor, David Patton

11    with Federal Defenders for Mr. Myles.

12          THE COURT:  :    Good morning, Mr. Patton.

13          MR. PATTON:  :    And Mr. Myles is present.

14          THE COURT:  :    Good morning, Mr. Myles.  How are you.

15          THE DEFENDANT:  :    How are you, sir.

16          THE COURT:  :    All right.  Mr. Patton, this is your

17    application, so...

18          MR. PATTON:  :    It is, your Honor.

19          I don't have any new information to add to what we've

20    submitted in our papers, but I think the main thrust of our

21    argument for transfer, your Honor, is that this case simply

22    doesn't have anything to do with New York.  Mr. Myles has no

23    personal or professional connection to New York and none of his

24    alleged conduct occurred in New York, even in the broadest

25    sense of deciding what his conduct was and looking at

1  coconspirators as well.  There's simply nothing that occurred

2  in the Southern District of New York.

3          THE COURT:  :    Well, what do you say about the money

4  transfers and the possible overflights from JFK?

5          MR. PATTON:  :    Well, I would agree that the

6  government has made a valiant effort, arguing that venue exists

7  in the Southern District of New York.  We disagree with that,

8  and obviously if the case remains --

9          THE COURT:  :    Presuming you're right on that

10  argument.

11          MR. PATTON:  :    Absolutely.  But neither of those

12  activities or those facts say anything at all about why this

13  case should be here, which is really what a motion to transfer

14  venue is all about.  It's an equitable motion.  The caselaw

15  talks about balancing the equities.  The leading Supreme Court

16  case, *Platt*, discusses the type of factors that should be

17  considered when balancing --

18          THE COURT:  :    You list those factors and you say as

19  to those factors they point very much in favor of the transfer

20  to Florida.

21          MR. PATTON:  :    Yes, sir.

22          THE COURT:  :    And Mr. LaVigne lists the same ten

23  factors.  I guess there's really only eight factors that count

24  here because some of them are not applicable, such as the

25  destruction of business, factor number 5, but he points to the

1    same eight factors that you point to and says, well, they

2    really all indicate New York.

3              MR. PATTON:  :    Well, Mr. LaVigne is a fine lawyer,

4    your Honor, and his job is to make arguments, and I think the

5    government does what it can with the facts here, but the fact

6    is they argue with respect to the events.  The location of the

7    events, let's take that as an example, why the government says

8    the location of the events favors New York.  The three facts,

9    as I went through their motion, that support that the location

10   of events favors New York rather than Florida are: one, that

11   wire transfers were cleared through here.  And I think it's

12   highly significant that no money originated or terminated in

13   New York.  It simply passed through New York.  Nobody, and

14   especially Mr. Myles, maintained a bank account in New York,

15   which, again, that would be a tenuous connection to New York

16   and we'd still be making this motion even if Mr. Myles say

17   maintained a bank account in New York.  And we list a number of

18   cases, I can think of at least half a dozen, where there was

19   that type of connection to New York, where somebody actually

20   had a bank account here, and where transfer was granted

21   nonetheless because still the equities weighed in favor of

22   moving it.  But here we don't even have that.  And the

23   government just never points to a single case where venue was

24   as tenuous as it is here, if it does exist, and where transfer

25   was denied.  It's hard to imagine a more tenuous connection to

1   New York.  So that's one.

2           The other are these DHL shipments, which, again, the

3   government at this point can't even say with certainty whether

4   that even provides them with venue.  DHL apparently -- and I

5   accept the government's representation on this, but -- says

6   that DHL sends everything through JFK.  Well, as your Honor

7   knows, JFK is in the Eastern District.  And so the government

8   says, and it may be that these flights passed over Southern

9   District airspace.  Well, again, maybe they win in the end on

10   whether or not venue exists here.  I don't think they do.  I

11   think that's far too tenuous.  But it certainly doesn't go to

12   the equities.

13           THE COURT:  :   Was there any affidavit from the FAA

14   that flight patterns from JFK transit the Southern District of

15   New York?

16           MR. PATTON:  :   I would --

17           THE COURT:  :   No.  The answer is no.

18           MR. LaVIGNE:  :   No.

19           MR. PATTON:  :   No.  So...

20           THE COURT:  :   I don't suppose it's within your

21   knowledge as to whether or not they do or don't.

22           MR. PATTON:  :    It's not within my knowledge.

23           THE COURT:  :   All right.

24           MR. PATTON:  :    And then lastly, the government

25   includes something about one of the customers that the

1    government alleges Mr. Myles had sold parts to had made

2    solicitations to parts sellers throughout the country, and one

3    of the people he solicited was in Westchester.  And that's

4    apparently why the New York ICE agents and US Attorney's Office

5    became involved in this investigation.  Now that was prior to

6    Mr. Myles' involvement, according to the government's own

7    dates.  All they say is that this person, CC1 from the Middle

8    East, solicited parts from somebody in Westchester, doesn't say

9    that any transaction actually took place, and more

10   importantly --

11            THE COURT:  :    It also doesn't say what the connection

12   is between the person in Westchester and Mr. Myles --

13            MR. PATTON:  :    There's none.

14            THE COURT:  :    -- if any.

15            MR. PATTON:  :    Absolutely.  I mean, there's certainly

16   no allegation.

17            So that to me is just a complete red herring.  That to

18   me -- there's no question that that doesn't even provide venue,

19   much less a basis for denying transfer.

20            So that's the long-winded answer of taking one example

21   of the ten factors and saying, those are the government's

22   arguments and I commend them for coming up with them, but

23   frankly, I just don't think they hold any water at all when it

24   comes to weighing whether this case should be here.  It may go

25   some ways in their argument down the road about why it can be

1    here but certainly says nothing about the *Platt* factors or the

2    equities.

3                    THE COURT:  :    All right.  Mr. LaVigne?

4                    MR. LaVIGNE:  :    Your Honor, as you indicated, this is

5    Mr. Patton's motion.  It's Mr. Patton's burden to show that

6    transfer is warranted.  And there's a strong presumption, as we

7    cited in our brief, that cases should be prosecuted in the

8    districts in which they were indicted.

9                    THE COURT:  :    Correct.

10                   MR. LaVIGNE:  :    And here, looking at the *Platt* --

11                   THE COURT:  :    There's got to be some basis for it

12   though, right?

13                   MR. LaVIGNE:  :    Yes, your Honor, and there is a basis

14   to bring this.

15                   THE COURT:  :    What's the basis?

16                   MR. LaVIGNE:  :    To bring the case here in the

17   Southern District of New York?

18                   THE COURT:  :    Yes.

19                   MR. LaVIGNE:  :    The basis is that, as we alluded to,

20   the investigation originated here out of the Southern District

21   of New York.

22                   THE COURT:  :    Let me ask you a question.  Your sealed

23   complaint filed by Marcos Castro, he being duly sworn and

24   deposes and says, he talks about the conspiracy to violate the

25   Arms Export Control Act and he talks about Mr. Myles' role and

1    the role of several others, and then he says the basis of his

2    knowledge and information is based on the affidavit of Sean

3    Willman in support of a search warrant.  And then I read

4    Mr. Willman's affidavit, which he swore to in April of 2007,

5    before Magistrate Judge Snow in the Southern District of

6    Florida, and there's nothing about New York in it.  It's all

7    about Florida.  So what happened in New York that justifies

8    your assertion of venue in this jurisdiction?

9             MR. LaVIGNE:  :    Your Honor, if I may just have a

10   moment, I believe there were references in this complaint to

11   wire transfers going through New York, page 22, for example,

12   and we cite those in our brief.

13            THE COURT:  :    Right.  Those were used as the

14   justification for the search warrant and the execution of the

15   search warrant in Florida.

16            MR. LaVIGNE:  :    No, Judge, the reason why the search

17   warrant was executed in Florida was because --

18            THE COURT:  :    Because that's where the documents

19   were, that's where the business was transacted that Mr. Myles

20   was engaged in, correct?

21            MR. LaVIGNE:  :    That's correct, your Honor.  That's

22   where his business was located.  The reason for bringing the

23   case here is that, as we indicated, the investigation started

24   out of here, but putting that aside in terms of venue

25   considerations, wire transfers were cleared through the

1    Southern District of New York.

2                THE COURT:  :   Tell me a little bit about the wire

3    transfers.  As I understand it, wire transfers, for any

4    transactions denominated in dollars from a foreign source, in

5    order to be converted into dollars, have to transit New York.

6                MR. LaVIGNE:  :   I don't know the answer to that, your

7    Honor.  In the case of these specific --

8                THE COURT:  :   Well, that's what I know from admiralty

9    law where under admiralty law that's how things are seized all

10   the time in the Southern District of New York.  Because

11   transactions denominated in dollars have to transit through the

12   federal wire, the Federal Reserve bank's wire system for

13   conversion.  That's a pretty slender reed for jurisdiction,

14   pretty slender reed for laying venue in New York, and it has no

15   connection at all with Mr. Myles.

16               MR. LaVIGNE:  :   But your Honor, it does have a

17   connection with Mr. Myles in the sense that that's how Mr.

18   Myles was compensated.  Mr. Myles would not have engaged in

19   this conspiracy, nor would he have engaged in shipping USML

20   parts directly overseas to the Middle East had he not been

21   paid.  And the only way -- the only way he was able to be paid

22   was by these overseas wire transfers, which came through the

23   Southern District of New York.

24               And at this stage, as Mr. Patton has indicated on a

25   handful of occasions in his briefs and today, this is not a

7an1mylc

1    motion to dismiss for lack of venue.  Venue is relevant to the

2    extent that the location of events is one of the *Platt* factors

3    named.  And this is an international conspiracy.  This is not a

4    case where a crime scene, for example, is relevant, such as a

5    murder case.  The location of events with respect to Florida

6    are not going to be in issue.  And we do cite cases in our

7    brief, *Guastella* is one, *Spy Factory* is another, the *Wilson*

8    case as well, where the courts talk about the fact that, where

9    conduct is international in scope or even national in scope,

10   the location of events really does not favor either side.  And

11   we've never contended that the location of events does favor

12   New York.  We contend venue is sufficient and that we'll meet

13   our burden at trial in establishing by a preponderance of the

14   evidence, but for purposes of this motion, location of events

15   does not weigh in favor of transfer.  The nerve center of this

16   conspiracy is the Middle East, pure and simple.  That's what

17   this --

18            THE COURT:  :   It's not going to be tried in the

19   Middle East.

20            MR. LaVIGNE:  :   It's not going to be tried in the

21   Middle East, but hopefully others will be tried here in the

22   United States.  And given that the location of events favors

23   neither side, taking all of the other *Platt* factors in

24   totality, the defendant has not met his burden.  Residence of

25   the defendant, for example, is something that counsel's focused

1  upon, but Mr. Myles is incarcerated, and he'll be

2  incarcerated -- assuming his appeal is not granted and he's not

3  resentenced, he'll be incarcerated for the pendency of this

4  litigation.  Now --

5              THE COURT:  :    So in your view he's stripped of his

6  residence then and his connection with his home community

7  because he's currently incarcerated?  You can try him anywhere

8  then, right?

9              MR. LaVIGNE:  :    Assuming that the government can

10  establish venue anywhere.  But the argument hasn't been made --

11  and one of the reasons for transfers of venue in large part is

12  that it can significantly disrupt a defendant's life to be

13  tried in a far-away community.  That being said, we cited cases

14  in our brief where defendants have been tried in the Southern

15  District of New York even though they reside in California, or

16  Las Vegas.  Here that disruption to the defendant's life is not

17  an issue.  He's incarcerated.  He does not have the family

18  obligations that many of those defendants have.

19              THE COURT:  :    Mr. LaVigne, let's review the factors

20  that put the crime here in the Southern District of New York.

21  One is, you started your investigation here, correct?

22              MR. LaVIGNE:  :    That's correct, your Honor.

23              THE COURT:  :    And the other ones are money transfers

24  through the Federal Reserve wire system.

25              MR. LaVIGNE:  :    And correspondent banks, your Honor.

7an1mylc

1    THE COURT:  :    And correspondent banks.  And what

2    else?

3    MR. LaVIGNE:  :    Well, your Honor, in addition, we

4    discussed in our brief the airspace over the Southern District

5    of New York.

6    THE COURT:  :    You're not really serious about that

7    one, are you?

8    MR. LaVIGNE:  :    Absolutely, Judge.  Absolutely.

9    We've cited cases in our brief that say, and if we're talking

10   about venue now, that airspace over a district is sufficient.

11   And this is not an instance where Mr. Myles was unaware that

12   shipments were being sent from Fort Lauderdale to JFK

13   International Airport and then overseas.  As we alluded to in

14   our brief, we have correspondence between Mr. Myles and customs

15   and border protection agents who were working at JFK who

16   intercepted certain shipments, albeit they're not charged, but

17   that certainly does show knowledge.  And again, this is a

18   conspiracy charge.  Venue is proper in any district, as we

19   indicated, under 18 US Code Section 3237, through which I

20   believe mail or commerce travels.

21   THE COURT:  :    Now in your complaint here, the sealed

22   complaint, which is Exhibit A to your memorandum of law in

23   opposition, Mr. LaVigne, there's a reference to Mr. Davis and

24   Ms. Douglas --

25   MR. LaVIGNE:  :    That's correct, your Honor.

7an1mylc

1          THE COURT:  :    -- as coconspirators.

2          MR. LaVIGNE:  :    That's correct.

3          THE COURT:  :    Have they been indicted?

4          MR. LaVIGNE:  :    No, they have not, your Honor.

5          THE COURT:  :    Okay.  Are they going to be indicted

6     here in the Southern District, do you know?  Can you say?  I

7     don't want to pressure you too far.

8          MR. LaVIGNE:  :    Your Honor, I expect they will be

9     charged here in the Southern District of New York shortly.

10          THE COURT:  :    Did they have any money transfers?

11          MR. LaVIGNE:  :    Yes, yes, your Honor.  Ms. Douglas

12     was an employee of Mr. Myles.  Mr. Davis, though, also received

13     wire transfers.

14          And looking at the other factors, Judge, we're talking

15     about the location of the possible witnesses.  Counsel has

16     alluded to several purported character witnesses that Mr. Myles

17     would like to call on his behalf.  He has not identified them

18     with specificity, nor has he shown that they will be

19     unavailable to testify.  And regarding the expense, CJA will

20     compensate or will pay for the travel and testimony of those

21     witnesses.  Were the government to try this case in Florida,

22     the government would have to incur significant expense in terms

23     of law enforcement agents and just generally having two

24     assistant United States attorneys be there for the pendency of

25     the trial.

1           And as we also indicated in our brief, another factor

2    that does weigh against transfer is the location of counsel.

3    Mr. Myles has been represented by Federal Defenders of New York

4    at this point for approximately four to five months, has not

5    shown that counsel in Florida is more familiar with this case

6    than his current counsel now, and that also is a factor that

7    weighs against transfer.

8           On balance, Judge, given the fact that it's the

9    defendant's burden to prove transfer, given the fact that

10   there's a strong presumption in allowing cases to be brought in

11   the district for which they were charged, and given the fact

12   that this is an international conspiracy, a case where

13   Mr. Myles' business, while the actual office was in Fort

14   Lauderdale, the business was conducted by fax, by email, by

15   telephone, by internet.  The locus of events is not significant

16   for purposes of this case.  Therefore, that factor, which has

17   really been the focus of Mr. Patton's motion, is neutral.  It's

18   neutral.

19          And the fact that the defendant is incarcerated rather

20   than at liberty in the community and having various family

21   obligations that could be interrupted also does not weigh in

22   favor of transfer.

23          So on balance, the government does not believe that

24   Mr. Patton or Mr. Myles have met their burden in seeking to

25   transfer this case.

7an1mylc

| | |
|---|---|
| 1 | THE COURT:  :    Mr. Patton?  Last word on this. |
| 2 | MR. PATTON:  :    Your Honor, I would just say with |
| 3 | respect to this idea that it's a global conspiracy and |
| 4 | therefore New York is as good a place as any to bring the |
| 5 | charges against Mr. Myles, I agree, we live in a modern age |
| 6 | where businesses are conducted by fax and email and wire |
| 7 | transfers and so on and so forth.  And had Mr. Myles been |
| 8 | telephoning people in New York, had he been mailing people in |
| 9 | New York, had he been conducting business with people in New |
| 10 | York, whether he had actually come here or not, I think the |
| 11 | government would be on much stronger footing.  But those are |
| 12 | simply not the facts.  All of this faxing and emailing and so |
| 13 | on and so forth was done from Florida and it was not done to or |
| 14 | from New York. |
| 15 | And with respect to his personal circumstances, being |
| 16 | incarcerated, as we said in our reply brief, I honestly think |
| 17 | that if anything, that favors transfer more than if he were |
| 18 | not.  He's up here without family visits, without the support |
| 19 | of people to come see him.  If counsel is to do any |
| 20 | investigating, it's going to have to be in Florida.  Florida is |
| 21 | the natural place for that to take place, for his counsel to be |
| 22 | near whatever character witnesses need to be interviewed, |
| 23 | whatever fact witnesses need to be interviewed.  And for the |
| 24 | pendency of this trial, for Mr. Myles to have the support of |
| 25 | his family and friends, I think it's basic, it's a basic part |

1    of the consideration in these cases, and it doesn't weigh any

2    less strongly in Mr. Myles' favor simply because he's unable to

3    move freely.  Frankly, it just means that while this case is

4    pending, instead of being able to return to his family, he

5    won't be able to.

6              THE COURT:  :   All right.  Article III of the

7    Constitution provides that all cases, all crimes shall be tried

8    by a jury and such trial will be held in the state where the

9    same crime has been committed.  I doubt whether this creates a

10   constitutionally based right that the defendant has to be tried

11   in his home district.  And the parties agree that the question

12   of venue, whether it's appropriate in the Southern District of

13   New York, is not really the issue.

14             What is before the Court is defendant's motion

15   pursuant to Federal Rule of Criminal Procedure 21(b), which

16   provides that upon defendant's motion, the Court can transfer

17   the proceeding to another district for the convenience of the

18   parties and witnesses and in the interests of justice.

19             Both sides also agree that the controlling law is set

20   forth in the *Platt* case reported at 376 US 240.  And the *Platt*

21   factors, there's ten of them, and while Mr. Justice Clark, in

22   announcing his decision, recited the ten factors, it's clear

23   that they were the factors determined and considered by the

24   district court judge.  Those ten factors are as follows:

25             The location of the defendant; the location of the

1    witnesses; the location of the events likely to be at issue;

2    the location of documents; the disruption, if the case is not

3    transferred, disruption of defendant's business; the expense to

4    the parties; location of counsel; relative accessibility to

5    venue; docket conditions; and special elements.

6           I find that there's no special elements here.  And the

7    docket conditions are not particularly indicative one way or

8    the other.  And in light of the defendant's incarceration, I

9    find that there's no disruption to the defendant's business

10    because in his current status, the defendant has no business to

11    be disrupted.

12           On each of the other factors, however, I find that

13    they tip decidedly in favor of transfer.  Notwithstanding the

14    government's arguments that the defendant is federally

15    incarcerated in an unrelated matter, there is no doubt that

16    Mr. Myles is a resident of the state of Florida.  He has

17    substantial witnesses, to the extent that he has character

18    witnesses, and there may be other witnesses in Florida with

19    respect to the subject matter of the crime.  Many of the

20    events, in particular Mr. Myles' participation in this

21    conspiracy, occurred only in Florida.

22           And with respect to the documents, notwithstanding the

23    government's arguments that the documents, many of the

24    documents are already here in New York, that can hardly be

25    dispositive because the documents can be shipped anywhere.

7an1mylc

1    What's more important is that the documents were obtained in

2    the state of Florida pursuant to a search warrant.

3              I find the expense of the parties to be far more

4    onerous for the defendant's witnesses than it would be for the

5    government.

6              Location of counsel tips slightly in favor of the

7    defendant.

8              Florida is certainly the more accessible state.

9              What's really troubling to me is that the government's

10   basis for venue here in the Southern District of New York is to

11   me a very slender reed.  The idea that money transfers

12   occurring through the federal wire system confirm or convey

13   venue here in the Southern District of New York is a very

14   severe stretch so far as I am concerned, as is the flying of

15   DHL Courier Services out of JFK may transit airspace over the

16   Southern District of New York.  If those two facts were the

17   case, I believe that almost every single case and certainly

18   every securities case in the United States of America could be

19   brought here in the Southern District of New York.  And that is

20   a possibility that I do not want to contemplate.

21             At any rate, it's the finding of the Court on these

22   facts and the law that defendant has carried its burden, and

23   I'm going to transfer this case to the Southern District of

24   Florida, which is the residence of Mr. Myles, where the search

25   warrant was first executed, where the documents in their

7an1mylc

1    original condition were located, and where Mr. Myles, to the

2    extent he participated in this conspiracy, he did his

3    participation from the Southern District of Florida.

4              I'll enter an order to that effect granting the

5    defendant's application to transfer this matter to the Southern

6    District of Florida.

7              Anything else, Mr. Patton?

8              MR. PATTON:  :   No, your Honor.  Thank you.

9              THE COURT:  :   Mr. LaVigne?

10             MR. LaVIGNE:  :    Your Honor, may I have one moment?

11             THE COURT:  :   Yes.

12             (Pause)

13             MR. LaVIGNE:  :    Judge --

14             THE COURT:  :   Yes, Mr. LaVigne.

15             MR. LaVIGNE:  :    -- it appears that time will be

16   excluded and should be excluded under the Speedy Trial Act in

17   order to effectuate the transfer, but out of an abundance of

18   caution, the government would ask that time be excluded for a

19   period until a control date set by your Honor?

20             THE COURT:  :    How much time do you think you need?

21             MR. LaVIGNE:  :    The Marshals are responsible for

22   transferring him to -- transferring Mr. Myles to Florida.

23   Obviously we'll inform them as soon as possible.  Probably

24   three weeks I think would be the amount of time it would take

25   for Mr. Myles to get down.

7an1mylc

1          THE COURT:  :    Why don't we say a month.  I mean, I

2    know the Marshals' transportation service can take a lot of

3    time.

4          MR. LaVIGNE:  :    Right.

5          THE COURT:  :    Mr. Patton?

6          MR. PATTON:  :    That's fine, your Honor.  What I would

7    propose then is to be set down a control date and a potential

8    court appearance for 30 days from now.  Hopefully that won't be

9    necessary.  And if he's out of the district, we can contact

10   chambers and say it's not necessary to appear.

11         THE DEPUTY CLERK:  :    30 days would be Thanksgiving,

12   so the Monday following is November 26th, 2007, 2:30 p.m.

13         THE COURT:  :    Mr. LaVigne, is that satisfactory?

14         MR. LaVIGNE:  :    That's fine, Judge.

15         MR. PATTON:  :    I'm sorry.  Did you say -- I have

16   Monday as the 26th.

17         THE DEPUTY CLERK:  :    Monday the 26th.

18         MR. PATTON:  :    All right.  Thank you.

19         THE COURT:  :    The time between now and Monday,

20   November 26th, will be excluded in order to facilitate the

21   parties' compliance with the order of the Court which has just

22   been entered on the record.  And those interests outweigh the

23   interests of the public and the defendant in a speedy trial, so

24   the time up through November 26th will be excluded.

25         Anything else?

7an1mylc

1          MR. LaVIGNE:  :    No, your Honor.

2          THE COURT:  :    Thank you very much.

3          THE DEPUTY CLERK:  :    This court stands in recess.

4                              o0o

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25