# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

DAVID MACEY and
EDWIN PAGAN III,

*Defendants.*

No. 24 Cr. 641 (JHR)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DAVID MACEY'S MOTION TO DISMISS THE INDICTMENT AND MOTION FOR SEVERANCE

David Patton
Sean Hecker
Shawn G. Crowley
Thea Raymond-Sidel
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
dpatton@heckerfink.com
shecker@heckerfink.com
scrowley@heckerfink.com
traymond-sidel@heckerfink.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I.    Mr. Macey's History and Practice ........................................................................... 2

    II.    The Recio/Costanzo Allegations and Trial ............................................................. 3

    III.    The Instant Case Against Mr. Pagan and Mr. Macey ............................................... 4

ARGUMENT ........................................................................................................................ 5

    I.    The Court Should Dismiss the Charges Against Mr. Macey for Failure to Properly
        Allege a Bribery Scheme ....................................................................................... 5

        A.    Legal Standard ............................................................................................. 5

        B.    The Government Fails to Plead the Necessary *Quid Pro Quo* Agreement. ........ 6

        C.    The Government Fails to Plead Any Violation of a "Lawful Duty." .................. 8

        D.    The Government Fails to Allege that Mr. Macey Had Any Knowledge of Mr.
                Costanzo's "Lawful Duties" Sufficient to Establish an Intent to Induce Mr.
                Costanzo to Violate Them. ........................................................................... 10

        E.    In the Alternative, Mr. Macey Seeks Leave to Move for a Bill of Particulars .. 11

    II.    The Court Should Sever Mr. Pagan, and His Accompanying Perjury Charges,
        from Mr. Macey's Trial ....................................................................................... 12

        A.    Legal Standard ........................................................................................... 13

        B.    The Admission of Mr. Pagan's Prior Testimony to Prove Perjury Would Be
                Inadmissible in a Trial Against Mr. Macey and Would Seriously Prejudice
                His Defense by Revealing the Existence and Details of the Prior Trial. .......... 13

        C.    Trying Mr. Pagan and Mr. Macey Together Would Prejudice Mr. Macey's
                Defense by Imputing Knowledge of DEA Policies and Procedures to Mr.
                Macey. ...................................................................................................... 17

        D.    The Admission of Mr. Pagan's Prior Testimony in the Recio/Costanzo Trial
                Introduces Significant Confrontation Clause Issues. ...................................... 19

CONCLUSION .................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Bruton v. United States*,
    391 U.S. 123 (1968) ................................................................................................ 19

*Direct Sales Co. v. United States*,
    319 U.S. 703 (1943) ................................................................................................ 11

*Dowling v. United States*,
    473 U.S. 207 (1985) .................................................................................................. 5

*Gray v. Maryland*,
    523 U.S. 185 (1998) ............................................................................................ 15, 21

*Mason v. Scully*,
    16 F.3d 38 (2d Cir. 1994) ...................................................................................... 19

*McDonnell v. United States*,
    579 U.S. 550 (2016) ............................................................................................... 6, 8

*Nash v. United States*,
    54 F.2d 1006 (2d Cir. 1932) .................................................................................. 17

*Ryan v. Miller*,
    303 F.3d 231 (2d Cir. 2002) .................................................................................. 19

*Snyder v. United States*,
    603 U.S. 1 (2024) ..................................................................................................... 6

*United States v. Aleynikov*,
    676 F.3d 71 (2d Cir. 2012) ................................................................................. 6, 6, 8

*United States v. Beech-Nut Nutrition Corp.*,
    871 F.2d 1181 (2d Cir. 1989) ................................................................................ 10

*United States v. Benjamin*,
    95 F.4th 60 (2d Cir. 2024) ....................................................................................... 7

*United States v. Blevins*,
    960 F.2d 1252 (4th Cir. 1992) .............................................................................. 15

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987) .................................................................................. 11

*United States v. Branker*,
395 F.2d 881 (2d Cir. 1968) ........................................................................ 18

*United States v. Casamento*,
887 F.2d 1141 (2d Cir. 1989) ...................................................................... 13

*United States v. Costanzo*,
No. 22 Cr. 281 (S.D.N.Y.) ..................................................................... 3, 14

*United States v. Costanzo*,
No. 24-1310 (2d Cir. 2025) ........................................................................... 4

*United States v. Costanzo (Recio)*,
No. 24-1469 (2d Cir. 2025) ........................................................................... 4

*United States v. Covington*,
395 U.S. 57 (1969) ........................................................................................ 5

*United States v. Delli Paoli*,
229 F.2d 319 (2d Cir. 1956) ........................................................................ 21

*United States v. Donaway*,
447 F.2d 940 (9th Cir. 1971) ...................................................................... 18

*United States v. Figueroa*,
618 F.2d 934 (2d Cir. 1980) ........................................................................ 16

*United States v. Gallo*,
668 F. Supp. 736 (E.D.N.Y. 1987) ............................................................. 16

*United States v. Goldberg*,
756 F.2d 949 (2d Cir. 1985) .......................................................................... 6

*United States v. Heicklen*,
858 F. Supp. 2d 256 (S.D.N.Y. 2012) ........................................................... 6

*United States v. Johnson*,
26 F.3d 669 (7th Cir. 1994) ........................................................................ 15

*United States v. Jorge Luis Hernandez Villazon*,
No. 25 Cr. 327 (M.D. Fla.) ........................................................................... 3

*United States v. Martínez*,
994 F.3d 1 (1st Cir. 2021) .............................................................. 16, 17, 18

*United States v. Maxwell*,
534 F. Supp. 3d 299 (S.D.N.Y. 2021) ........................................................ 13

*United States v. McGill,*
    815 F.3d 846 (D.C. Cir. 2016) ......................................................... 15

*United States v. Mitziga,*
    No. 23 Cr. 242, 2024 WL 3361629 (N.D. Ill. July 10, 2024) ..................... 20, 21

*United States v. Ong,*
    541 F.2d 331 (2d Cir. 1976) ......................................................... 16

*United States v. Pirro,*
    212 F.3d 86 (2d Cir. 2000) ......................................................... 6, 9

*United States v. Sampol,*
    636 F.2d 621 (D.C. Cir. 1980) ..................................................... 17, 18

*United States v. Silver,*
    948 F.3d 538 (2d Cir. 2020) ................................................... 5, 7, 7, 8

*United States v. Silverstein,*
    737 F.2d 864 (10th Cir. 1984) ...................................................... 14

*United States v. Sun-Diamond Growers of California,*
    526 U.S. 398 (1999) ............................................................. 1, 6, 8

*United States v. Taylor,*
    745 F.3d 15 (2d Cir. 2014) ..................................................... 15, 16, 19

*United States v. Walker,*
    142 F.3d 103 (2d Cir. 1998) ........................................................ 13

*Zafiro v. United States,*
    506 U.S. 534 (1993) ............................................................ 1, 13, 17

**STATUTES AND RULES**

18 U.S.C. § 201(b)(1)(C) ............................................................. 1, 6, 8

Fed. R. Crim. P. 7(f) ................................................................... 11

Fed. R. Crim. P. 12(b) .................................................................. 5

Fed. R. Crim. P. 14(a) ................................................................. 13

Fed. R. Evid. 403 .................................................................... 14, 16

Fed. R. Evid. 801 ...................................................................... 14

iv

Fed. R. Evid. 803 ................................................................................................ 14

Fed. R. Evid. 804 ................................................................................................ 14

S.D.N.Y. Local Criminal Rule 16.1 ...................................................................... 11

U.S. Const. amend. VI ........................................................................................ 19

# PRELIMINARY STATEMENT

To plead and prove bribery, the government must do more than simply allege a scattered assortment of possible *quids* and possible *quos*. It must, instead, plead "a specific intent to give or receive something of value *in exchange* for," in this case, a violation of a lawful duty. *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404 (1999); 18 U.S.C. § 201(b)(1)(C). But the indictment in this case fails to plead required elements of this standard: It fails to draw the necessary connection between its proposed *quids* and proposed *quos*; it fails to allege a violation of a "lawful duty" as the government itself defines it; and it fails to allege that Mr. Macey had any knowledge of that "lawful duty," meaning that Mr. Macey cannot have had the requisite specific intent to induce its violation. Because the allegations in the indictment, even if true, fail to plead bribery, the charges against Mr. Macey should be dismissed.

But the issues with this case do not end with the indictment. Even if the Court were to let this case proceed against Mr. Macey, it should sever Mr. Pagan and his accompanying perjury charges from Mr. Macey's case, because the evidence admissible against Mr. Pagan—testimony in a separate criminal trial where the only two other alleged coconspirators in this case were convicted of the same charges—would not be admissible in a trial against Mr. Macey alone, are unduly prejudicial and have the potential to create major Confrontation Clause issues.

In sum, the charges against Mr. Macey are based on a flawed indictment and, if they proceed to a joint trial with Mr. Pagan, Mr. Macey will suffer a "serious risk" that the jury would be prevented "from making a reliable judgment about [his] guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Mr. Macey asks the Court to dismiss the charges against him, or, in the alternative, sever his trial on those charges from that of Mr. Pagan.

1

# BACKGROUND

## I. Mr. Macey's History and Practice

Since 2005, Mr. Macey's practice has consisted almost entirely of representing clients who would like to cooperate and provide reliable information to law enforcement in exchange for leniency. Macey Decl. ¶ 3. Some of those clients are known to law enforcement before Mr. Macey initiates outreach; others are entirely unknown. *Id.* ¶ 4. Mr. Macey helps prepare his clients for these meetings with government agents and prosecutors, ensuring that law enforcement obtain truthful, reliable, useful information that they can use to target higher-level narcotics traffickers and kingpins. *Id.* ¶ 5. Mr. Macey, and attorneys like him, are critical to law enforcement's ability to find and sign up dependable cooperators, helping those agents develop strong networks of information, leading to solid cases against bigger targets. *Id.* ¶ 6.

Mr. Macey's practice, by its very nature, requires that he work closely with federal law enforcement agents. *Id.* ¶ 7. That closeness—particularly in the tight-knit legal community in Miami—can often lead to friendships. *Id.* ¶¶ 7-8. Mr. Macey and Mr. Costanzo—the agent he is alleged to have bribed for information in this case—have been close friends for more than a decade, sharing meals, celebrating holidays, and taking trips together. *Id.* ¶¶ 8-9. It was through Mr. Costanzo that Mr. Macey met Mr. Recio, another DEA agent, and got to know Mr. Pagan, a member of the Coral Gables Police Department and a Task Force Officer[1] at the DEA. *Id.* ¶ 10. Mr. Pagan, in particular, grew close to Mr. Macey's family, particularly his son, Milo, with whom Mr. Pagan would exercise regularly. *Id.* ¶ 11; *see also* Patton Decl. Ex A (Day 14 Trial Tr.) at 1733-34.

---

[1] A Task Force Officer (or "TFO") is a state or local law enforcement officer who has been deputized to assist the DEA in its investigations. *See* Patton Decl. Ex A (Day 14 Trial Tr.) at 1727.

In November 2018, Mr. Recio retired from the DEA and sought to build a career as a private investigator—a common route for former law enforcement to take. *Id*. ¶ 12. On a recommendation from Mr. Costanzo—Mr. Macey's good friend—Mr. Macey hired Mr. Recio as a private investigator. *Id*. After several months, Mr. Macey parted ways with Mr. Recio, deciding that the arrangement was not a good fit. *Id*. ¶ 13. During that time, unbeknownst to Mr. Macey, the FBI had begun investigating the group, wiretapping Mr. Recio's phone, and enlisting a cooperating witness to surreptitiously record meetings between them.[2]

## II. The Recio/Costanzo Allegations and Trial

In May 2022, Mr. Costanzo and Mr. Recio were charged with bribery and honest services fraud for a scheme wherein "Recio and others provided Costanzo various benefits in exchange for Costanzo using his official position to benefit Recio and others on an as-needed basis." Indictment ¶ 7, *United States v. Costanzo*, No. 22 Cr. 281 (S.D.N.Y.). Although Mr. Pagan was described in that indictment as a source of the largest payment to Mr. Costanzo, he still testified for the defense at that trial. Mr. Pagan testified to the statements for which he is now facing perjury charges, including his assertion that his payment to John Costanzo, Sr. was "an investment in a house," Indictment ¶ 29;[3] his statement that an invoice he had written was an investment in the company he was starting with Mr. Recio, *id.* ¶ 31; testimony that he had been paid for work he had done for Mr. Recio on a bribery case, *id.* ¶ 33; and finally, the statement that he paid for Mr. Costanzo's flights to reimburse him for money he had spent on a car Mr. Pagan had purchased from Mr. Costanzo. *Id.* ¶ 35.

Mr. Costanzo and Mr. Recio were convicted on all counts. Their appeal is currently

---

[2] That witness was recently arrested and charged in a criminal complaint with wire fraud for extorting criminal defendants who sought to cooperate with the government, promising 5K1.1 agreements in exchange for millions of dollars. *See* Indictment, *United States v. Jorge Luis Hernandez Villazon*, No. 25 Cr. 327 (M.D. Fla. July 1, 2025).

[3] All citations to "Indictment ¶ __" refer to the Superseding Indictment in this case filed at ECF 28.

pending before the Second Circuit. *See United States v. Costanzo*, Nos. 24-1310, 24-1469 (2d Cir. argued June 26, 2025).

### III. The Instant Case Against Mr. Pagan and Mr. Macey

In November 2024, Mr. Pagan was charged in the instant case with bribery, honest services fraud, and four counts of perjury. ECF 2. In February of this year, the government superseded, adding Mr. Macey to the indictment and charging him with bribery and honest services fraud. Indictment ¶¶ 1-27. The superseding indictment alleges that Mr. Macey, Mr. Pagan, and Mr. Recio, "paid and assisted in paying bribes" to Mr. Costanzo. *Id.* ¶ 1.

The indictment alleges the following payments: A $2,500 payment in November 2018 from Macey to Recio's company, Global Legal Consulting, that allegedly made its way to Costanzo through Costanzo's father's company, *id.* ¶ 7; a $50,000 payment in January 2019 from Pagan to Costanzo through Costanzo's father (without any explanation as to how Macey allegedly provided the money), *id.* ¶¶ 8-9; a ticket to a baseball game in April 2019 purchased by Macey for Costanzo, *id.* ¶¶ 10-11; a $10,000 check in April 2019 from Recio to Pagan's company, JEM Solutions (with no stated connection to Macey), *id.* ¶ 12; and a $10,750 check in June 2019 from Recio to JEM Solutions (with no stated connection to Macey). *Id.*

In its recitation of these payments, the indictment nowhere states what they were purportedly in exchange for. Instead, the indictment separately lists an unconnected collection of requests for information from Mr. Macey and Mr. Recio to Mr. Costanzo. *Id.* ¶¶ 14, 20. These alleged "requests" include: a November 13, 2018 text from Recio to Costanzo with the name of an individual, *id.* ¶ 20(b); a February 2019 text from Recio to Costanzo sending the name and birthdate of an individual, *id.* ¶ 14(a); an April 2019 text from Macey to Costanzo asking him to "let [Macey] know what [Costanzo] think[s] about this guy" who was "arrested 1 month ago," *id.* ¶ 14(b); an August 2019 text from Macey asking Costanzo about a writ for a witness, *id.* ¶ 14(c);

an August 2019 text from Macey to Costanzo with a screenshot of one of Macey's clients, *id.* ¶ 14(d); and a November 2019 text from Macey to Costanzo containing only a screenshot of a document (and no "request"), *id.* ¶ 20(o).

## **ARGUMENT**

### I. The Court Should Dismiss the Charges Against Mr. Macey for Failure to Properly Allege a Bribery Scheme

The bribery and honest services fraud counts should be dismissed because the allegations in the indictment, taken as true, do not establish criminal liability over Mr. Macey. First, instead of pleading the requisite *quid pro quo*, the government instead pleads "a promise . . . so lacking in definition or specificity that it amounts to no promise at all." *United States v. Silver*, 948 F.3d 538, 557 (2d Cir. 2020). Second, the government fails to plead that Mr. Costanzo agreed to provide any information for "nonofficial purposes," a requirement to prove a violation of the DEA policy the government has chosen to underpin its "lawful duty" element. And finally, the government fails to allege any facts suggesting that Mr. Macey had any knowledge of any DEA policy he allegedly induced Mr. Costanzo to violate, let alone the requisite intent. For these reasons, the bribery and honest services fraud counts should be dismissed.

#### A. Legal Standard

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see also United States v. Covington*, 395 U.S. 57, 60–61 (1969) (holding that where determinative questions of law were decided in his favor, defendant was entitled to dismissal of indictment). Because federal crimes are "solely creatures of statute," *Dowling v. United States*, 473 U.S. 207, 213 (1985) (internal quotation marks omitted), "a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute,"

*United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012).

A court accepts all pertinent allegations in an indictment as true. *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). Where, as here, the government has set out detailed allegations in the indictment, the Court must dismiss the indictment if those allegations, even if true, do not establish criminal liability. *See, e.g., United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000) (affirming dismissal of tax fraud and perjury counts because conduct alleged in indictment did not violate applicable statute); *Aleynikov*, 676 F.3d at 76–82 (reversing denial of dismissal of indictment because transferring proprietary computer source code, as alleged in indictment, did not constitute an offense under either the National Stolen Property Act or the Economic Espionage Act); *United States v. Heicklen*, 858 F. Supp. 2d 256, 275–76 (S.D.N.Y. 2012) (dismissing indictment where facts alleged did not constitute the crime of attempting to influence the actions of a juror). "Indeed, it would be a waste of judicial resources to conduct a trial, only to rule on a post-trial motion that the government's theory of criminal liability fails, no matter what the facts it was able to establish at trial." *Heicklen*, 858 F. Supp. 2d at 262 n.5.

### B. The Government Fails to Plead the Necessary *Quid Pro Quo* Agreement.

The crime of bribery requires "a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for," in this case, a violation of a "lawful duty." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999); 18 U.S.C. § 201(b)(1)(C); *see also McDonnell v. United States*, 579 U.S. 550, 574 (2016) ("Section 201 prohibits *quid pro quo* corruption."); *Snyder v. United States*, 603 U.S. 1, 11 (2024) (explaining, from the perspective of a public official, that "bribery requires that the official have a corrupt state of mind and accept (or agree to accept) the payment intending to be influenced in the official act"). To prove a charge of honest services fraud that relies on a bribery theory, as the government does, Indictment ¶¶ 25, 27,

it must likewise prove a *quid pro quo*. *Silver*, 948 F.3d at 551. A *quid pro quo* requires more than "a promise to perform *some* act . . . to 'benefit the payor,' without more," because "such a promise is so lacking in definition or specificity that it amounts to no promise at all." *Id.* at 557. Instead, "the *quid pro quo* [must] be clear and unambiguous, leaving no uncertainty about the terms of the bargain." *United States v. Benjamin*, 95 F.4th 60, 68 (2d Cir. 2024).

The indictment fails to allege any *quid pro quo*. It instead describes, at best, a formless arrangement of alleged payments as *quids* (many entirely unlinked to Mr. Macey) and so-called "requests" as *quos* with no apparent connection between them and no effort to proffer any such connection. The indictment alleges only five possible *quids*: A $2,500 payment in November 2018 from Macey to Recio allegedly "funneled . . . through a series of transactions" to Constanzo, Indictment ¶ 7; a $50,000 payment in January 2019 from Pagan to Costanzo through Costanzo's family member, alleged without any specificity to have somehow (it's unclear how) derived from Macey, *id.* ¶¶ 8-9; a ticket to a baseball game in April 2019 purchased by Macey for Costanzo, *id.* ¶¶ 10-11; a $10,000 check in April 2019 from Recio to Pagan's company, JEM Solutions, *id.* ¶ 12; and a $10,750 check in June 2019 from Recio to JEM Solutions. *Id.* None of these payments apparently have any relationship with any of the communications alleged to have "solicit[ed] confidential, nonpublic DEA information." *Id.* ¶¶ 14, 20. The indictment does not even attempt to draw a connection; indeed, it contains not a single word about what each of the supposed payments was for.

The prospect that the government plans to charge an as-opportunities-arise theory does not save it. To the extent that the government intends to charge such a theory, it must prove a "promise to take official action *on a particular question or matter* as the opportunity to influence that same question or matter arises." *Silver*, 948 F.3d at 553. But the government has not pled—presumably

because it cannot prove—that Macey made any payments as a result of a promise from Costanzo to take official action on any particular question or matter. The NADDIS searches outlined in the indictment bear this out, as they appear to be completely unrelated to one another, suggesting, at most, that Costanzo bore general goodwill toward Macey and would deliver information when it was requested. But "the *quid pro quo* requirement demands more than a mere promise to perform some or any action to 'benefit the payor,'" *id.* at 558, because the bribery statute emphatically does not criminalize "any effort to buy favor or generalized goodwill from an official who either has been, is, or may at some unknown, unspecified later time, be *in a position to act* favorably to the giver's interests." *Sun-Diamond*, 526 U.S. at 405-06; *see also McDonnell*, 579 U.S. at 574-75 (rejecting the government's "expansive interpretation" of the bribery statute where "nearly anything a public official accepts . . . counts as a *quid*" and "nearly anything a public official does . . . counts as a *quo*"). Because the government has failed to allege "the particular question or matter to be influenced," *Silver*, 948 F.3d at 545, at the time the promise was made (or even whether any promise was made in the first place), it has not pled a required element of its bribery and honest services fraud charges, requiring their dismissal. *See Aleynikov*, 676 F.3d at 75-76.

## C.  The Government Fails to Plead Any Violation of a "Lawful Duty."

In addition to its failure to plead a bribery scheme, the government has failed to plead any violation of a "lawful duty" by Mr. Costanzo that could underpin any violation of 18 U.S.C. § 201(b)(1)(C), honest services fraud, or any conspiracy to violate either.

The indictment alleges that the DEA's "Standards of Conduct" includes a provision outlining conduct that constitutes "Misuse of Official Position," including: "[d]istribut[ing] or disclos[ing] information not available to the general public for nonofficial purposes." Indictment ¶ 5. Even assuming that the DEA's definition of "Misuse of Official Position" constitutes a

violation of a lawful duty under 18 U.S.C. § 201(b)(1)(C), the indictment does not plead that Mr. Costanzo distributed any such information "for nonofficial purposes." Instead, the indictment alleges that Mr. Costanzo "shar[ed] nonpublic, confidential DEA information, including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assisting MACEY and [Recio] with cases involving charged defendants, in violation of [Costanzo's] duties as a DEA employee." Indictment ¶ 22; *see also id.* ¶ 27 (alleging that Costanzo "provid[ed] nonpublic, confidential DEA information to, among others, MACEY and [Recio], so that MACEY and [Recio] could use that information to recruit and represent criminal defendants, including targets of DEA investigations"). Even taking these facts as true, the government has not pled that Mr. Costanzo did any of these acts for "nonofficial purposes," as required to make these acts violative of any "lawful duty" as alleged in the indictment.

This is not a trivial omission. Whether the alleged acts were for "nonofficial purposes" goes to the heart of these charges. The indictment silently assumes, rather than pleads, that *any* sharing of confidential information with a defense attorney was for a "nonofficial purpose." Perhaps the reason for this glaring oversight is that the conduct alleged relates to information provided by Costanzo that on its face *was* for official purposes, *i.e.*, information to facilitate cooperation that would benefit the DEA. But regardless of why the government omitted this critical element, the Court cannot be called upon to fill in the blanks and infer the phrase "nonofficial purposes" where it is not actually charged. *See Pirro*, 212 F.3d at 94 (rejecting the argument that the Court should infer the phrase "shareholder interest" from the phrase "ownership interest"); *see also id.* at 92 (instructing that "the indictment must be considered as it was actually drawn, not as it might have been drawn"). Because the government has failed to do so here, the Court should dismiss the bribery and honest services fraud counts and the accompanying conspiracy charges.

**D. The Government Fails to Allege that Mr. Macey Had Any Knowledge of Mr. Costanzo's "Lawful Duties" Sufficient to Establish an Intent to Induce Mr. Costanzo to Violate Them.**

Finally, the Indictment fails to allege that Mr. Macey could have acted with the requisite intent to induce Mr. Costanzo to violate any lawful duties. While the indictment alleges a single basis for those duties (the DEA Manual's Standards of Conduct described above), it does not allege that Mr. Macey had, or even that he could have had, any knowledge of those duties, nor indeed whether Mr. Macey could have ever had requisite access to the DEA Manual to learn of them.

Unlike the other alleged coconspirators in this case, Mr. Macey has never been a DEA agent or TFO. He has not been trained regarding the duties of DEA agents and would never have had any occasion to be; in fact, the excerpts of the DEA Manual that the government admitted as exhibits in the Recio/Costanzo trial were marked as "DEA Sensitive," meaning that neither the personnel manual "nor its content may be disseminated outside of the DEA . . . without the express written permission of the Office of Chief Counsel." Patton Decl. Ex. B (GX 113A). The government does not plead that the Office of Chief Counsel ever allowed the contents of the manual to be disseminated to Mr. Macey. Thus he cannot be presumed to have any knowledge of any provisions in the manual, including the DEA Standards of Conduct or what conduct constitutes "Misuse of Official Position."

This is a particularly striking omission given the above discussion about the government's failure to properly plead a violation of lawful duty. Under what circumstances a DEA agent may share certain non-public information with a defense lawyer in service of cultivating a cooperating witness is not the sort of knowledge that a person without DEA training can simply be presumed to possess. Without any allegations that Mr. Macey had any knowledge of Mr. Costanzo's "lawful duties," the government does not plead that he could have intended to violate them. And "[w]ithout the knowledge, the intent cannot exist." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d

1181, 1195 (2d Cir. 1989) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)).

**E. In the Alternative, Mr. Macey Seeks Leave to Move for a Bill of Particulars.**

In lieu of dismissal, in the alternative, Mr. Macey also seeks leave to move for a bill of particulars, to allow him to prepare for trial and to prevent surprise. Fed. R. Crim P. 7(f); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). After conferring with the government pursuant to Local Criminal Rule 16.1 and failing to reach agreement on these issues, Mr. Macey seeks the following information to enable him to determine the government's alleged *quid pro quo* and the "lawful duties" that Mr. Costanzo is alleged to have violated:

1. Any alleged requests for information by Mr. Macey and Mr. Recio of Mr. Costanzo not listed in the Indictment that the government plans to prove at trial.

2. Any alleged proffers of information by Mr. Costanzo not listed in the Indictment that the government plans to prove at trial.

3. Any other "lawful duties" Mr. Costanzo is alleged to have violated, and Mr. Macey is alleged to have induced him to violate, and the DEA manuals, policies, or other materials from which they derive.

4. Any alleged payments by Mr. Macey, Mr. Pagan, Mr. Recio, or others not listed in the indictment that the government plans to prove at trial.

5. The alleged lawful duty violated in exchange for the $2,500 payment alleged in Paragraph 7 of the indictment, and the factual basis for Mr. Macey's knowledge of that duty and intent to induce its violation.

6. The alleged lawful duty violated in exchange for the $50,000 payment alleged in Paragraphs 8 and 9 of the indictment, and the factual basis for Mr. Macey's knowledge of that duty and intent to induce its violation.

7. The alleged lawful duty violated in exchange for the ticket to the baseball game alleged in Paragraphs 10 and 11 of the indictment, and the factual basis for Mr. Macey's knowledge of that duty and intent to induce its violation.

8. The alleged lawful duty violated in exchange for the $10,000 payment alleged in Paragraph 12 of the indictment, and the factual basis for Mr. Macey's knowledge of that duty and intent to induce its violation.

9. The alleged lawful duty violated in exchange for the $10,750 payment alleged in Paragraph 12 of the indictment, and the factual basis for Mr. Macey's knowledge of

that duty and intent to induce its violation.

10. The alleged thing of value given in exchange for the alleged request for information in Paragraph 14(a) of the indictment.

11. The alleged thing of value given in exchange for the alleged request for information in Paragraph 14(b) of the indictment.

12. The alleged thing of value given in exchange for the alleged request for information in Paragraph 14(c) of the indictment.

13. The alleged thing of value given in exchange for the alleged request for information in Paragraph 14(d) of the indictment.

14. The alleged thing of value given in exchange for the alleged request for information in Paragraph 20(b) of the indictment.

15. The alleged thing of value given in exchange for the alleged request for information in Paragraph 20(o) of the indictment.

## II. The Court Should Sever Mr. Pagan, and His Accompanying Perjury Charges, from Mr. Macey's Trial

A trial of Mr. Pagan and Mr. Macey together represents the prototypical situation where severance is proper. First, the perjury charges against Mr. Pagan will require the jury to hear unduly prejudicial details from a prior trial where the only other coconspirators in the case were found guilty of the same bribery and honest services fraud charges that have been brought against Mr. Pagan and Mr. Macey, requiring severance. Second, the evidence against Mr. Pagan, along with the evidence regarding Mr. Recio and Mr. Costanzo, would cause a serious risk that the jury could impute their knowledge of internal DEA policies and procedures onto Mr. Macey. And finally, the perjury charges against Mr. Pagan, and the introduction of his testimony during the prior trial, will cause significant Confrontation Clause issues that cannot be properly addressed with redactions or a limiting instruction. In light of these significant concerns, the Court should sever Mr. Pagan and Mr. Macey's trials or, in the alternative, sever Mr. Pagan's perjury charges.

**A. Legal Standard**

Rule 14(a) of the Federal Rules of Criminal Procedure allows a court to order separate trials if joining all offenses in a single trial would prejudice the defendant. Severance is permissible "if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro*, 506 U.S. at 539. And "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* Severance is thus appropriate where "significant unfairness" of this kind would "outweigh the burden on the court of conducting multiple trials." *United States v. Maxwell*, 534 F. Supp. 3d 299, 320 (S.D.N.Y. 2021), *aff'd on other grounds*, 118 F.4th 256 (2d Cir. 2024). "Motions to sever are committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989).

**B. The Admission of Mr. Pagan's Prior Testimony to Prove Perjury Would Be Inadmissible in a Trial Against Mr. Macey and Would Seriously Prejudice His Defense by Revealing the Existence and Details of the Prior Trial.**

The admission of the details of Mr. Pagan's prior testimony in the Recio/Costanzo trial to prove Mr. Pagan's perjury charge would be inadmissible and unduly prejudicial in a trial of Mr. Macey alone, causing a "serious risk" that the jury would be prevented "from making a reliable judgment about [Mr. Macey's] guilt or innocence." *See Zafiro*, 506 U.S. at 539. As the Court reasoned in *Zafiro*, such a "serious risk" occurs "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted

against a codefendant." *Id.*

Mr. Pagan's testimony in the Recio/Costanzo trial would not be admissible in any case against Mr. Macey alone. In that context, Mr. Pagan's testimony would be pure hearsay: a prior out-of-court statement by a third party subject to no hearsay exception, admitted to prove the charges against Mr. Macey. *See* Fed. R. Evid. 801, 803, 804.[4] But more fundamentally, even if Mr. Pagan's statements would be theoretically admissible, any minimal probative value would be substantially outweighed by a danger of unfair prejudice to Mr. Macey by revealing that Mr. Costanzo and Mr. Recio already went to trial, were convicted on the same charges that Mr. Macey now faces, and Mr. Pagan testified at that trial and was disbelieved. *See* Fed. R. Evid. 403.

And the inference that Mr. Costanzo and Mr. Recio were convicted at any prior proceeding where Mr. Pagan testified would be inescapable, no matter how that proceeding is couched during this trial. This case will be based largely upon evidence that involves only Mr. Recio and Mr. Costanzo, including numerous calls and texts between them; even at trial, it will be clear that the government seeks to place Mr. Macey and Mr. Pagan, at most, on the fringes of a conspiracy between Mr. Recio and Mr. Costanzo.[5] The jury would then wonder about the conspicuous absence of those two main coconspirators, who will not appear as either witnesses or codefendants in the

---

[4] Nor does Mr. Pagan's testimony qualify as a coconspirator statement under Fed. R. Evid. 801(d)(2)(E). Such statements must be "during and in furtherance of the conspiracy," and the government cannot seriously suggest that its alleged conspiracy was still occurring while Mr. Recio and Mr. Costanzo were being tried for it. *See* Fed. R. Evid. 801(d)(2)(E). Indeed, the indictments in these cases do not allege that any conspiracy continued through October 2023, when the Recio/Costanzo trial began. *See* Indictment ¶¶ 7, 40, *United States v. Costanzo*, No. 22 Cr. 281 (S.D.N.Y. May 18, 2022) (alleging that the charged conspiracies continued through November 2019); Indictment ¶¶ 1, 27 (alleging that the charged conspiracies continued through January 2020). To the extent that the government might characterize Mr. Pagan's testimony as an attempt to conceal the conspiracy as a means of extending its lifespan, this too fails. *See, e.g.*, *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984) ("The duration of a conspiracy does not extend to attempts to conceal the crime.").

[5] As an example, of the over 60 discrete communications the government admitted at the Recio/Costanzo trial, only just over a dozen involved either Mr. Macey or Mr. Pagan. The rest involved Mr. Costanzo, Mr. Recio, another Miami attorney, Luis Guerra, and the government's informant. Because much of the discovery in this case is duplicative of the discovery in the Recio/Costanzo trial, we expect that the ratio in this case will be similar.

case. Then the government will seek to admit testimony from a mysterious "prior proceeding" in which Mr. Pagan discusses two of the same *quid* allegations as in this case: the $50,000 payment, Indictment ¶ 9, and the $20,750 payment from Recio to JEM Solutions, *see id.* ¶ 12. For each juror, the truth will click into place: The government presented the same evidence against Mr. Recio and Mr. Costanzo, and Mr. Pagan testified, at this "prior proceeding"; and given that the government now charges Mr. Pagan with perjury for his statements, the government must have convicted Mr. Recio and Mr. Costanzo of the same conduct at that "prior proceeding." This is the kind of easy, obvious "inference[] that a jury ordinarily could make immediately," even if it were "the very first item introduced at trial." *See Gray v. Maryland*, 523 U.S. 185, 196 (1998); *see also United States v. Taylor*, 745 F.3d 15, 29-30 (2d Cir. 2014) (vacating codefendants' convictions because "[t]he jury could immediately infer" that redacted statements referenced the codefendants). Any way it is described, it will be impossible for the jury to infer that the proceeding in which Mr. Pagan made the allegedly perjurious statements is anything but what it is: the Recio/Costanzo trial.

And once that inference is made, "[t]he law is well-settled that a codefendant's . . . conviction may not be introduced as substantive evidence of another defendant's guilt." *United States v. McGill*, 815 F.3d 846, 897 (D.C. Cir. 2016). This rule exists for the simple reason that, upon learning of a conviction of a codefendant or coconspirator, the jury "may possibly infer that the defendant on trial is more likely to be guilty, as well." *United States v. Johnson*, 26 F.3d 669, 677 (7th Cir. 1994); *see also United States v. Blevins*, 960 F.2d 1252, 1260 (4th Cir. 1992) (holding that introduction of such evidence "raises the concern that a defendant might be convicted based upon the disposition of the charges against the co-defendants, rather than upon an individual assessment of the remaining defendant's personal culpability"). Accordingly, the facts underlying the perjury charge against Mr. Pagan—where, how, and why the statements were made—would

not be admissible in any trial against Mr. Macey alone.

The danger of this substantial prejudice in a joint trial cannot be overstated. As discussed, the indictment alleges a scheme which was, at most, orchestrated primarily by Mr. Costanzo and Mr. Recio. If the evidence at the past trial is any indication, the vast majority of the recordings and text messages the jury will be seeing in this case occurred only between Mr. Costanzo and Mr. Recio and yet will be used to prove charges against Mr. Macey and Mr. Pagan. *See United States v. Ong*, 541 F.2d 331, 338 (2d Cir. 1976) (finding prejudice indicating that severance was proper where the government "introduce[d] [a] multitude of tapes concerning solely the other defendants"). Were the jury to then infer based on an oblique reference to Mr. Pagan's testimony in a "prior proceeding," as discussed above, that Mr. Costanzo and Mr. Recio were tried first and convicted, that knowledge would, without question, unduly prejudice Mr. Macey's defense such that severance is warranted. *See United States v. Martínez*, 994 F.3d 1, 14 (1st Cir. 2021) (ordering a new trial based on spillover prejudice from evidence admissible only against a codefendant, and noting that such evidence in a severed trial, even if relevant, would otherwise have been limited by FRE 403); *United States v. Gallo*, 668 F. Supp. 736, 752 (E.D.N.Y. 1987) (severing a case in part because relevant evidence would be excluded "under Rule 403 in a separate trial of [a single] defendant alone because its probative value would be outweighed by the danger of unfair prejudice"). And a cautionary or limiting instruction would not diminish the overwhelming prejudice here. *See United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (noting that cautionary instructions should not be "invariably accepted" and observing that "the balancing required by Rule 403 for all evidence would not be needed if a limiting instruction always insured that the jury would consider the evidence only for the purpose for which it was admitted"); *see also Taylor*, 745 F.3d at 28 (describing following a limited instruction as "the recommendation to

the jury of a mental gymnastic which is beyond, not only their powers, but anybody else's" (quoting *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (Hand, J.)) (cleaned up)).

### C. Trying Mr. Pagan and Mr. Macey Together Would Prejudice Mr. Macey's Defense by Imputing Knowledge of DEA Policies and Procedures to Mr. Macey.

In addition, the nature of the evidence of Mr. Costanzo, Mr. Recio, and Mr. Pagan's roles in the alleged conspiracy and knowledge of DEA policies and procedures would risk the jury imputing that knowledge and evidence against Mr. Macey.

Courts have noted that where "charges growing out of the same underlying event[s] . . . but premised upon entirely disparate levels and allegations of culpability . . . foreshadow[] confusion of the evidence and prejudice" and are ripe for severance. *United States v. Sampol*, 636 F.2d 621, 643 (D.C. Cir. 1980); *see also Zafiro*, 506 U.S. at 539 (noting that when defendants are "tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened"). Indeed, evidence that largely implicates codefendants or coconspirators "risk[s] leading the jury in considering [the defendant's] charges to impute the states of mind of" their codefendants, *Martínez*, 994 F.3d at 15, thereby "prevent[ing] the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

If the evidence in the Recio/Costanzo trial is any indication, the government will likely seek to admit portions of the DEA manual to prove that various actions Mr. Costanzo took— disclosing NADDIS and other allegedly confidential information—violated DEA policy. *See, e.g.*, Patton Decl. Ex. C (Day 6 Trial Tr.) at 266. And as in the Recio/Costanzo trial, the government will likely introduce evidence not only of Mr. Costanzo's knowledge of these manuals and policies, but of Mr. Recio's (and presumably Mr. Pagan's) knowledge of them as well. Even assuming for argument's sake that a violation of a single provision of the DEA manual constitutes a violation of Mr. Costanzo's "lawful duty," Mr. Macey had no such knowledge of any of the

provisions of the DEA manual; indeed, based on the evidence the government produced at the last trial, he could not have had any such knowledge. *See* Patton Decl. Ex. B. This separates him from each of his alleged coconspirators, all of whom were current or former DEA agents and TFOs. Mr. Macey has never been a DEA agent or a TFO. The government does not even allege Mr. Macey had knowledge of the DEA's policies and procedures, let alone describe any evidence that might prove it. *See supra* Section I.D; Indictment ¶¶ 4-6, 19, 22, 25, 27. And yet the government will undoubtedly seek to admit evidence at trial that Mr. Costanzo, Mr. Recio, and Mr. Pagan—all being active or retired DEA agents or TFOs—all knew about these policies and conspired to violate them. There is a substantial risk that the jury will assume that, as a codefendant charged alongside Mr. Pagan and an alleged coconspirator with Mr. Costanzo and Mr. Recio, Mr. Macey would have had such knowledge and intent as well. It is thus "impossible to conclude on the facts here that [Mr. Macey] [would] not [be] severely prejudiced by the evidence relevant only to the co-defendants." *United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971); *see also Sampol*, 636 F.2d at 643 (reversing a denial of severance because "during the trial it became apparent that [the defendant's] guilt or innocence might well be confused with that of his co-defendants"). And given the centrality of these DEA policies to the government's theory of the case and the fact that all other players in the case are current and former DEA employees, any cautionary or limiting instructions the Court could give would "not suffice to mitigate th[e] risk of spillover prejudice here." *Martínez*, 994 F.3d at 15; *see also United States v. Branker*, 395 F.2d 881, 889 (2d Cir. 1968) (internal quotation marks and citations omitted) ("In our view the risk of prejudice . . . by reason of the joinder was so great that no amount of cautionary instructions could have undone the harm.").

### D. The Admission of Mr. Pagan's Prior Testimony in the Recio/Costanzo Trial Introduces Significant Confrontation Clause Issues.

Finally, Mr. Pagan's testimony in the Recio/Costanzo trial—which must be admitted in this case to prove Mr. Pagan's perjury charge—raises significant Confrontation Clause issues that threaten Mr. Macey's right to a fair trial.

The Confrontation Clause of the Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The crux of [the Confrontation Clause] is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." *United States v. Taylor*, 745 F.3d 15, 28 (2d Cir. 2014) (internal quotation marks omitted). Under *Bruton v. United States* and its progeny, a defendant is "denied his constitutional right of confrontation" where the government introduces a codefendant's statement that implicates the defendant "in a form not subject to cross-examination, since [the codefendant/accuser] did not take the stand." 391 U.S. 123, 128 (1968); *see also Mason v. Scully*, 16 F.3d 38, 42 (2d Cir. 1994) ("A defendant's right to confront the witnesses against him includes the right not to have the incriminating hearsay statement of a nontestifying codefendant admitted in evidence against him."). "To implicate the defendant's confrontation right, the statement need not have accused the defendant explicitly but may contain an accusation that is only implicit." *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002).

The government would no doubt want to introduce a number of Mr. Pagan's statements at the prior trial to prove the perjury charges against Mr. Pagan—but those statements will also be useful (though inadmissible) to prove the substantive bribery and honest services fraud charges in a trial against Mr. Macey alone. Most significantly, Mr. Pagan admitted that he was the source of the $50,000 payment for Mr. Costanzo's townhouse (while leaving open the possibility that the

money could have originally come from Mr. Macey, which appears to be the government's theory of the payment). Patton Decl. Ex. A at 1737-39; *see also id.* at 1771-73, 1819-20. And Mr. Pagan testified that JEM Solutions—the company alleged to have been one of the means by which the conspirators laundered the bribes to Mr. Costanzo—was his company, and that the name stood for John, Eddie, and Manny, or Mr. Costanzo, Mr. Pagan, and Mr. Recio. *Id.* at 1726, 1739-40; *see also id.* at 1786. Mr. Pagan also testified that Recio paid $20,750 through his company, Global Legal Consulting, to JEM Solutions. *Id.* at 1749-52. These facts, which the government will no doubt seek to admit for their truth, will implicate Mr. Macey's alleged participation in the scheme, but Mr. Macey will be unable to cross-examine Mr. Pagan on his statements at the prior trial, introducing a clear Confrontation Clause issue.

Neither redactions nor limiting instructions will cure the problem. Because the perjury charges against Mr. Pagan are based on the same events as the bribery and honest services fraud charges against Mr. Macey, there is no question that if Mr. Macey's name is replaced in Mr. Pagan's testimony with "someone else" or "another guy" or "one of my friends," that alteration will not hoodwink the jury into believing there must be a fifth alleged, unnamed, never-again-mentioned coconspirator in this case.

A recent case that discussed the use of redactions in codefendant statements, *United States v. Mitziga*, No. 23 Cr. 242, 2024 WL 3361629 (N.D. Ill. July 10, 2024), shows why. In that case, two codefendants, Mitziga and Likovski, were charged with giving and receiving bribes, trading lower property assessments for golf club memberships. *Id.* at *1. Likovski referred to Mitziga in a statement to the grand jury that the government planned to admit at trial, but the government proposed altering the quotation so that Mitziga's name was replaced with a generic "member" of the golf club. *Id.* Judge Kennelly held that this did not cure the prejudice against Mitziga, because

"Likovski's statement directly refers to the existence of another specific participant, referenced as 'the member' of the golf club, and describes his participation. . . . It will be obvious from the evidence to be introduced at trial that this is a . . . direct reference to Mitziga." *Id.* at *3.

So too here. As the Indictment makes clear, the bribery and honest services fraud charges against Mr. Macey are premised on the same events described by Mr. Pagan in his prior testimony. Were that testimony to be introduced, even in a redacted form and for a different purpose, "[i]t will be obvious" that Mr. Pagan referred to Mr. Macey in his testimony. *Id.* And to add to the prejudice, after hearing a generic phrase in place of Mr. Macey's name, the jury will turn to Mr. Macey himself, sitting right in front of them, accused of participating in the same acts Mr. Pagan described at the Recio/Costanzo trial. *See Gray*, 523 U.S. at 193 ("[A] jury will often react similarly to an unredacted confession and a confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant."); *see also United States v. Delli Paoli*, 229 F.2d 319, 321 (2d Cir. 1956) (Hand, J.) (observing that redaction in this context is not only "futile" but that "there could not have been the slightest doubt as to whose names had been blacked out," and "even if there had been, the blacking out itself would have not only laid the doubt, but underscored the answer"). And finally, where, as here, a defendant has made "powerfully incriminating . . . statements" against a codefendant, such statements "are so prejudicial that limiting instructions cannot work." *Gray*, 523 U.S. at 192 (internal quotation marks omitted). As in *Mitziga*, a limiting instruction would not "cure the problem, enable [Mr. Macey] to get a fair trial, or satisfy his Confrontation Clause rights." 2024 WL 3361629, at *3.

## CONCLUSION

For the foregoing reasons, we ask that the Court dismiss Counts One through Four of the Indictment, or, in the alternative, sever Mr. Pagan from this trial so he may be tried separately.

Dated: August 8, 2025
New York, New York

Respectfully submitted,

David Patton
Sean Hecker
Shawn G. Crowley
Thea Raymond-Sidel
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
dpatton@heckerfink.com
shecker@heckerfink.com
scrowley@heckerfink.com
traymond-sidel@heckerfink.com

*Counsel for Defendant David Macey*